IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRISCILLA ANDRING HUMPHREY,

        Plaintiff,

v.                              Case No. 13-4025-JTM

STATE OF KANSAS DEPARTMENT OF
WILDLIFE, PARKS AND TOURISM,

        Defendant.

MEMORANDUM AND ORDER

This matter comes before the court on defendant State of Kansas Department of Wildlife, Parks and Tourism's Motion to Dismiss (Dkt. 11) and plaintiff Priscilla A. Humphrey's Motion to Amend Complaint (Dkt. 15). The court has reviewed the briefs on each motion and is now prepared to rule.

**I. Factual Background**

Plaintiff Priscilla A. Humphrey is a 49-year-old black woman who was formerly employed as an administrative specialist by defendant State of Kansas Department of Wildlife, Parks and Tourism ("the KDWPT"). Humphrey was the only black administrative specialist; the others were white. While Humphrey worked at the KDWPT, Becky Blake, a white female, was her direct supervisor.

Humphrey claims that she was subjected to disparate treatment because of her race. She alleges that the disparate treatment consisted of Blake assigning her "much more work and responsibility than she could reasonably complete, while her white

coworkers were allowed to be less productive." She alleges that her employment was terminated because she was unable to keep up with the work.

Humphrey also alleges that her termination was retaliation by the KDWPT in violation of Title VII. In March of 2012, Humphrey alleges that she complained to two coworkers, Linda Craghead and Todd Workman, about an inappropriate racial comment made by a white male coworker. Humphrey claims that after this protest, she was assigned an even more unreasonable workload. Humphrey also allegedly complained to Becky Blake on May 17, 2012, after a member of the Governor's Council on Tourism made references to "negroes" and "Mexicans" that offended her. Humphrey alleges that she was terminated because of these objections.

Humphrey also claims that the KDWPT retaliated against her for seeking FMLA leave. During the week of June 4, 2012, Humphrey claims she was ill. Despite her illness, she worked on Monday and Tuesday. She claims she was unable to work on Wednesday and Thursday and alleges that she used FMLA intermittent leave on Thursday due to her diabetes. While still ill, Humphrey claims she returned to work on Friday, June 8, but she became overwhelmed by the amount of work she had been assigned. When she told Blake that she could not do all of her work, Blake took Humphrey's key and told her to take the weekend to think it over. The next day, Humphrey emailed Blake a request to use available FMLA leave effective immediately. Humphrey did not receive a response until Tuesday, June 12, when she was advised that the KDWPT was treating her leaving on Friday as a resignation and was terminating her employment.

**II. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The KDWPT argues that because it is entitled to Eleventh Amendment immunity on Humphrey's FMLA claim, the court has no subject matter and must dismiss the claim under Federal Rule of Civil Procedure 12(b)(1). As a threshold issue, the court addresses this issue first. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Federal courts have limited jurisdiction and may exercise their power only when specifically authorized to do so. *Castanedo v. Immigration Naturalization Serv.*, 23 F.3d 1576, 1580 (10th Cir. 1994). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal based upon a court's lack of subject matter jurisdiction. When analyzing a Rule 12(b)(1) motion to dismiss, the court presumes it lacks subject matter jurisdiction until the plaintiff can prove otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citation omitted). Here, the KDWPT's Rule 12(b)(1) motion constitutes a facial attack on the allegations in

Humphrey's complaint. Accordingly, we presume all of the allegations contained in the complaint to be true. *Id.* at 1002 (citation omitted).

With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999) (citation omitted). To assert Eleventh Amendment immunity, a defendant must qualify as a state or an "arm" of a state. *Id.* at 1232. Here, no dispute exists between the parties that the KDWPT qualifies as an "arm" of the state of Kansas. Humphrey even alleges in her complaint that KDWPT "is an agency of the State of Kansas . . . ."

There are two primary circumstances in which a citizen may sue a state without offending Eleventh Amendment immunity. *Ruiz*, 299 F.3d at 1181. Congress may abrogate a state's Eleventh Amendment immunity, and a state may also waive its Eleventh Amendment immunity and consent to be sued. *Id.* Neither exception applies in this case. First, Humphrey does not argue that Kansas consented to be sued under the FMLA. Second, as the court explains below, the U.S. Supreme Court recently held that Congress did not abrogate the States' Eleventh Amendment immunity against FMLA claims for self-care leave. *See Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012).

The Family and Medical Leave Act of 1993 entitles eligible employees to take up to twelve work weeks of unpaid leave per year. 29 U.S.C. § 2601–2654. Under the FMLA, an employee may take leave for (A) the birth of a son or daughter ... in order to care for such son or daughter" (B) the adoption or foster-care placement of a child with

4

the employee, (C) the care of a spouse, son, daughter, or parent with a serious health condition, and (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work. § 2612(a)(1).

In passing the FMLA, Congress attempted to create a private right of action to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." § 2617(a)(2); *See Coleman*, 132 S. Ct. at 1332–33 (2012). The Supreme Court in *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) held that pursuant to its powers under Section 5 of the Fourteenth Amendment, Congress could subject the States to suit for violations of subsection (C), § 2612(a)(1)(C), which grants leave for reasons related to family care.[1] The Court found that "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits is weighty enough to justify the enactment of prophylactic § 5 legislation." *Hibbs*, 538 U.S. at 735. Subsections (A) and (B) also grant leave for family care; these three subsections are referred to as the family-care provisions. *See Coleman*, 132 S. Ct. at 1332.

Humphrey claims she was terminated after requesting FMLA self-care leave, implicating subsection (D), which was not at issue in *Hibbs*. The issue of the States' Eleventh Amendment immunity against subsection (D) claims came before the Court nine years later in *Coleman*. The Court found that the justification for Congress's enforcement power in *Hibbs*—discrimination in the States' administration of family

---

[1] Section 5 of the Fourteenth Amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5.

leave benefits—was not present with respect to the States' self-care provisions. *Coleman*, 132 S. Ct. at 1334–37. In light of Congress's failure to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations" regarding the FMLA's self-care provision, the Court held that Congress could not abrogate the States' Eleventh Amendment immunity against subsection (D) claims. *Id.* at 1338.

Humphrey argues that her claim is distinguishable from the plaintiff's claim in *Coleman*. The plaintiff in *Coleman* sued the State of Maryland for failing to provide his requested FMLA sick leave, whereas Humphrey claims she was fired in retaliation for her FMLA leave request.

The Court finds the distinctions between Humphrey's claim and that of the plaintiff in *Coleman* inconsequential to the issue of Eleventh Amendment immunity. Interference with an employee's right to take FMLA leave and retaliation against an employee for requesting FMLA leave are both prohibited under § 2615(a). Humphrey is correct that these two types of claims are distinguishable: interference claims arise from § 2615(a)(1) and retaliation claims arise from § 2615(a)(2). Additionally, retaliation claims are subject to the *McDonnell-Douglas* burden-shifting framework and interference claims are not. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). But these differences do not distinguish the claims in any meaningful way under Eleventh Amendment immunity analysis. Whether a plaintiff claims interference or retaliation, the claim necessarily stems from an employer preventing its employee from exercising his or her entitlement to FMLA leave as part of their job. The justifications for

FMLA are set forth in § 2612. Therefore, any claim brought against an employer for a violation of the FMLA's leave entitlements must be based on a subsection of § 2612. Humphrey's claim rests on subsection (D), but the Supreme Court has held that the States have Eleventh Amendment immunity against self-care claims based on subsection (D). The Court gave no indication that the type of FMLA claim—interference or retaliation—was significant regarding Eleventh Amendment immunity.[2]

Pursuant to *Coleman*, this court finds that Humphrey's FMLA claim is barred by the State's Eleventh Amendment immunity. This court accordingly dismisses Count III of the complaint for lack of subject matter jurisdiction.

**III. Motion to Dismiss for Failure to State a Claim**

*A. Legal Standard*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2]The U.S. Court of Appeals for the Tenth Circuit also gave no indication that the type of FMLA claim was significant when it held that subsection (D) of the FMLA violated the States' sovereign immunity in *Brockman v. Wyoming Dep't of Family Servs.*, 342 F.3d 1159 (10th Cir. 2003).

7

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming *Twombly*'s probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223–24. The court must assume that all allegations in the complaint are true. *Iqbal*, 556 U.S. at 696. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' " *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2, (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

The KDWPT argues that Humphrey's complaint does not set forth a prima facie disparate treatment or retaliation claim under Title VII. It argues that Humphrey quit and that Kansas administrative rules allow the defendant to refuse to rehire her. The court finds these arguments unpersuasive for the following reasons.

1. Count I – Title VII Race/Color Discrimination

Count I of Humphrey's complaint alleges race/color discrimination. It alleges that she was treated differently than her white co-workers because of her skin color. Specifically Humphrey claims that she was assigned larger workloads than her white counterparts and was subsequently terminated for being unable to keep up with the work. The U.S. Court of Appeals for the Tenth Circuit has stated that "an increased workload might constitute an adverse employment action in some circumstances." *Jones v. Barnhart*, 349 F.3d 1260, 1269–70 (10th Cir. 2003). The court in *Jones* held that the plaintiff's "generalized and unsubstantiated claims" that an employer discriminatorily increased her workload could not survive summary judgment. *Id.* at 1270. However, the

8

standard for a plaintiff facing a defendant's motion for summary judgment is higher than that for a motion to dismiss.

At this stage, the court must accept all of Humphrey's well-pleaded allegations as true, view those allegations in the light most favorable to her, and draw all reasonable inferences in Humphrey's favor. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A plaintiff alleging employment discrimination need not plead facts sufficient to establish a prima facie case to withstand a Rule 12(b)(6) motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Nevertheless, the *McDonnell Douglas* prima facie case elements of each alleged cause of action help to determine whether the plaintiff has set for a plausible claim. *Id.* "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

Accepting her well-plead allegations as true and viewing them in the light most favorable to her, Humphrey alleges a prima facie case of race/color discrimination. She is a black woman who was terminated from her employment, which fulfills the first two requirements. She alleges that she was assigned more work than her white counterparts until she was essentially fired for not being able to complete the work. In light of the Tenth Circuit's guidance that an increased workload might be an adverse employment action, her claim shows that her termination took place under circumstances that could give rise to an inference of discrimination. *See Jones*, 349 F.3d at 1269–70. Humphrey

9

pleaded facts that plausibly state a claim for Title VII race/color discrimination. Accordingly, the KDWPT's motion to dismiss Count I is denied.

### 2. Count II – Title VII Retaliation

Count II of Humphrey's complaint alleges that she was retaliated against for protesting racially offensive comments. Humphrey is not required to plead a prima facie case of retaliation to survive a Rule 12(b)(6) motion. *See Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 U.S. Dist. LEXIS 119853, at *5–6 (D. Kan. Oct. 17, 2011). However, applying the elements required to state a prima facie claim of retaliation can assist in determining plausibility. *See Khalik*, 671 F.3d at 1192. A prima facie claim of retaliation under Title VII may be shown by a plaintiff's claim that "(1) he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id*. at 1193.

At this point, "the plaintiff need not have 'adequately alleged a prima facie case' or 'circumstances that support an inference of discrimination' in order to survive a motion to dismiss. In employment discrimination cases, plaintiffs 'must satisfy only the simple requirements of Rule 8(a).' " *Shoemake*, 2011 U.S. Dist. LEXIS 119853 at *6 (citing *Swierkiewicz*, 534 U.S. at 510–13, 515). Although *Swierkiewicz* was decided prior to *Twombly*, the Court in *Twombly* noted specifically that "[t]his analysis does not run counter to *Swierkiewicz* . . . which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of

10

discrimination.'" *Twombly*, 550 U.S. at 547. A plaintiff can establish retaliation either by directly showing that retaliation played a motivating part in the employment decision, or indirectly by relying on the three-part *McDonnell Douglas* framework. *See Khalik*, 671 F.3d at 1192–93 (citing *Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987 (10th Cir.2011)).

The court dismisses Humphrey's retaliation claim because the complaint does not allege sufficient facts to support a plausible claim that she participated in protected opposition to discrimination. Humphrey's alleges that in March of 2012, she complained to two coworkers about a white coworker's inappropriate racial comment. In order to succeed at trial, Humphrey would ultimately have to show that her superiors knew she was engaging in protected opposition. *See, e.g.*, *Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002). But Humphrey does not even allege that she voiced this opposition to a supervisor, so she is not entitled to offer evidence on that requirement of the prima facie case.

A complaint of a single racist remark by a colleague, without more, is not opposition protected by Title VII. *Robinson v. Cavlary Portfolio Servs., LLC*, 365 Fed. App'x 104, 112 (10th Cir. 2010). The additional facts alleged by Humphrey offer no substantial aid to this deficiency. Humphrey also claims that she voiced a complaint to her supervisor after a member of the Governor's Council on Tourism made an inappropriate reference to "negroes" and "Mexicans." But a member of the Council on Tourism is no more than a third-party, nonemployee. Although an employer may be held liable for the harassing conduct of a customer under a negligence theory, Humphrey's allegations do not allow application of this theory. First, she does not

11

allege that the third-party nonemployee made the comments to her or anyone at the KDWPT. Second, she does not allege that the KDWPT had any authority or duty to prevent future offensive racial statements by a member of the Council on Tourism. Finally, she does not allege that these statements continued. Further, this court finds no legal authority supporting Humphrey's argument that an employee's objection to a single incident of an offensive comment made by a third-party nonemployee is protected opposition to discrimination. With none of the above facts alleged and no legal basis supporting this element, Humphrey's allegations are insufficient to state a claim of retaliation.

Even assuming the facts Humphrey pleaded are true and viewing them in the light most favorable to her, they do not support the prima facie element that she engaged in protective activity. Although Humphrey need not allege a prima facie case at this stage, the court finds that the facts Humphrey alleges on this element are so insufficient that her retaliation claim is not plausible. Therefore, the court dismisses Count II of the complaint.

**IV. Motion to Amend**

On July 26, 2013, Humphrey filed her Motion to Amend Complaint contemporaneously with her response to the KDWPT's Motion to Dismiss. The proposed amended complaint includes only two changes. In paragraph ten of the amended complaint, the word "I" has become "she," which is an immaterial change in language from a first-person to a third-person perspective. Humphrey also inserts the new phrase "in a retaliatory fashion," in paragraph twenty-two of the amended

complaint to make it read: "[Humphrey] was terminated *in a retaliatory fashion* shortly after taking intermittent leave and immediately after she requested FMLA leave from her supervisor." The phrase was not included in the original complaint and clarifies the FMLA claim as one for retaliation rather than denial of FMLA leave.

A party may amend its complaint once as a matter of course within twenty-one days of serving it, or twenty-one days after the service of the answer or a motion under Rule 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave, which should be given freely when justice so requires. FED. R. CIV. P. 15(a)(2). Here, Humphrey filed her motion to amend the complaint beyond the deadline for an amendment as a matter of course under Rule 15. Further, she filed her motion after the court's own deadline for amending the complaint, which was June 29. *See* Dkt. 8. Therefore, the court must determine whether justice requires an amendment.

Humphrey argues that the KDWPT will not suffer unfair prejudice because the amended complaint does not change the core facts and merely clarifies her FMLA claim. The KDWPT argues that the motion is untimely and asks for attorneys' fees pursuant to 28 U.S.C. § 1927, alleging that "[t]he sole purpose for filing the motion evidently is to prolong the process of obtaining a ruling on the motion to dismiss."

The court finds that the only material amendment in the proposed amended complaint is the one clarifying that the FMLA claim is based on retaliation rather than a denial of benefits. Because of the court's dismissal of Humphrey's FMLA claim, this proposed amendment is moot. As a result, the amended complaint would not change

anything and justice does not require the court to allow it. Accordingly, the motion is denied.

Additionally, the KDWPT's argument that the proposed amendments to the Complaint "serve no legitimate substantive purpose" ignores the fact that the FMLA claims were ambiguous as stated in the original Complaint. Its argument is odd given that the KDWPT's Motion to Dismiss specifically addresses Humphrey's FMLA claim as alleging both denial of FMLA leave and retaliation. It appears that the KDWPT understood, at one time, that the claim might cover either type of claim. To argue now that the amendment clarifying the FMLA claim "serve[s] no legitimate substantive purpose" disregards the KDWPT's prior statements about the claim. Accordingly, the court declines to award attorneys' fees to the KDWPT.

**V. Conclusion**

The court grants the KDWPT's Rule 12(b)(1) motion to dismiss Count III of the complaint, the FMLA claim, because the State of Kansas enjoys Eleventh Amendment immunity against the claim. The court grants the KDWPT's Rule 12(b)(6) motion to the extent that it seeks dismissal of Count II for failure to state a claim; the court declines to dismiss Count I. Finally, the court denies Humphrey's motion to amend her complaint, because the only amendments she suggests are immaterial.

IT IS THEREFORE ORDERED this 10th day of September, 2013, that the court grants in part and denies in part the State of Kansas Department of Wildlife, Parks and Tourism's Motion to Dismiss (Dkt. 11) to the extent set forth above. The court denies Humphrey's Motion to Amend (Dkt. 15).

s/J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE